UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY CARTER,

      Petitioner,

                             CASE NO. 2:06-CV-10552
v.                            JUDGE PAUL D. BORMAN
                             MAGISTRATE JUDGE PAUL J. KOMIVES

BLAINE C. LAFLER,

      Respondent.[1]
_____/

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION: The Court should reject respondent's argument that petitioner's claim is barred by petitioner's procedural default in the state courts, and should conclude that an evidentiary hearing is necessary to resolve the merits of petitioner's claim. Accordingly, the Court should order an evidentiary hearing and appoint counsel to represent petitioner for this purpose. If the Court accepts this recommendation, it may either conduct the evidentiary hearing or refer the matter to me for that purpose pursuant to Rule 8, 28 U.S.C. foll. § 2254.

II.    REPORT:

A.    *Background*

Petitioner Gregory Carter is a state prisoner currently confined in the Carson City Correctional Facility in Carson City, Michigan. On May 9, 2001, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Kent County Circuit Court. On July 5, 2001, petitioner was sentenced to a term of 15-40 years' imprisonment on the armed robbery conviction, and to a

---

[1] By Order entered this date, Blaine C. Lafler has been substituted for Cindi Curtin as the proper respondent in this action.

mandatory consecutive term of two years' imprisonment on the felony firearm conviction. Petitioner filed a direct appeal in the Michigan Court of Appeals, raising claims not relevant to the instant petition. His claims were rejected on appeal.

On July 30, 2002, the *Grand Rapids Press* reported on a story involving a computer glitch in Kent County's system for selecting jury venires. County officials conceded that their own review of their computer system revealed that "nearly 75 percent of the county's 454,000 eligible residents were excluded from potential jury pools since spring 2001" and that "[m]any blacks were excluded from . . . jury pools due to a computer glitch that selected a majority of potential candidates from the suburbs." The chief judge of the Kent County Circuit Court, George Buth, was quoted as saying, "There has been a mistake – a big mistake." The *Grand Rapids Press* articles explain that the error came to light after a Grand Rapids high school teacher and his students conducted a study of under-representation of minorities on Kent County juries. When the teacher reported the class findings to county officials they publicly insisted that the class's calculations were wrong, but when county officials finally conducted an internal study, they were startled to find that those calculations were exactly right. The teacher was quoted as saying that he finally went public with his complaints because "nobody wanted to do anything" about the problem. An article of August 2, 2002, explains how the error occurred:

> Although 453,981 names and addresses of eligible jurors from Kent County were on the list provided by the Michigan Secretary of State from driver's license rolls, the computer got instruction to consider only 118,169 names.
> After proportionately selecting from all ZIP codes, the computer routinely still needed more jurors. The additional names then were automatically taken from the same abbreviated list, starting at the lowest numbered ZIP codes – which are in the suburbs.
> The second search process almost never went further than 49505 – leaving out areas where most of the county's minority population lives: Grand Rapids, Kentwood, Wyoming and Walker.

2

> The report [Kent County Jury Management Report] says the decision to have county workers take over updating the computerized operation in April of 2001 [from private contractors] was made to save time and money.

In light of these revelations, petitioner filed in the trial court a motion for relief from judgment pursuant to MICH. CT. R. 6.500-.508, claiming that he was denied his Sixth and Fourteenth Amendment right to jury drawn from a fair cross-section of the community.[2] Relying on *People v. McKinney*, 258 Mich. App. 161-62, 670 N.W.2d 254, 258 (2003), the trial court denied the motion based on petitioner's failure to object to the jury array at trial, before the jury was sworn. *See People v. Carter*, No. 01-00091-FC (Kent County, Mich., Cir. Ct. Oct. 27, 2003). The Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Carter*, 472 Mich. 912, 696 N.W.2d 714 (2005); *People v. Carter*, No. 254482 (Mich. Ct. App. Aug. 20, 2004).

On February 9, 2006, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. As grounds for the writ, petitioner raises the fair cross-section claim that he raised in his state court motion for relief from judgment. Respondent filed an answer on August 22, 2006. Respondent argues that petitioner's claim is barred by his procedural default in the state courts. Petitioner filed a reply to respondent's answer on November 13, 2006. For the reasons that follow, the Court should conclude that petitioner's claim is not barred by a procedural default, and that an evidentiary hearing is necessary to resolve the claim.

B. *Procedural Default*

Respondent first contends that petitioner's claim is barred by petitioner's procedural default in the state courts, because petitioner failed to object to the composition of the jury array at trial. The

---

[2]Petitioner also raised a claim relating to his sentence. That claim is not at issue here.

Court should disagree. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, there is no question that the state courts relied on an adequate and independent state procedural rule to bar petitioner's claim. Nevertheless, petitioner can still obtain habeas review of his claim if he can establish "cause" for his default–that is, if he can "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also*, *Coleman*, 501 U.S. at 753. Cause may be established by "'a showing that the factual or legal basis for a claim was not reasonably available to counsel, *or* that some interference by officials made compliance impracticable, would constitute cause[.]'" *Amadeo v. Zant*, 486 U.S. 214, 222 (1988) (quoting *Murray*, 477 U.S. at 488 (internal quotation and citations omitted)). Under *Murray* and *Amadeo*, it is therefore clear that "[c]ause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (quoting *Amadeo*, 486 U.S. at 222).

4

Here, the factual basis of petitioner's fair cross-section claim was reasonably unknown to petitioner and his counsel at the time the jury was sworn. This is not a case where a publicly available jury selection plan itself systematically excluded minorities such that counsel could have known about that problem in advance of trial. Rather, the alleged systematic exclusion here resulted from an unknown glitch in the otherwise valid jury selection plan. It is undisputed that the computer error which allegedly resulted in systematic exclusion was unknown at the time of trial. Nor is there any indication that counsel should have been on notice of the error such that he should have challenged the composition of the jury venire sooner. The composition of petitioner's venire alone should not have spurred counsel to lodge an objection, because it is clear that this fact alone would be insufficient to support a fair cross-section claim. It is well established that "[e]vidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion." *United States v. Horne*, 4 F.3d 579, 588 (8th Cir. 1993); *accord United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001); *United States v. Hill*, 197 F.3d 436, 445 (10th Cir. 1999); *United States v. DeFries*, 129 F.3d 1293, 1301 (D.C. Cir. 1997).

In short, until the computer glitch was publicly disclosed well after petitioner's trial, neither petitioner nor his counsel had any reason to suspect that the fair cross-section requirement had been violated, nor any reason to conduct an investigation into Kent County's jury selection practices. This is sufficient to establish cause to overcome petitioner's procedural default in failing to object at trial and in failing to raise the claim on direct appeal. Accordingly, the Court should reject respondent's procedural default defense.

C.  *Evidentiary Hearing*

Turning to the fair cross-section claim, the Court should conclude that an evidentiary hearing is necessary to resolve this claim. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary

5

under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Taking the second issue first, an evidentiary hearing is permitted in this case under § 2254(e)(2). That section provides that, "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is permissible because petitioner has not "failed to develop the factual basis" of his newly discovered evidence and ineffective assistance claims. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[3] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id*. at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432. Here, it is true, petitioner did not seek an evidentiary hearing on direct appeal, but as explained above he had good cause for this failure. Petitioner did seek an evidentiary hearing in connection with his motion for relief from judgment. Thus, petitioner did not "fail to develop" the evidence in support of his claim. *See Mayes v. Gibson*, 210 F.3d 1284, 1288 n.2 (10th Cir. 2000) (*Michael Williams* standard satisfied where petitioner "raised the need for an evidentiary hearing" on direct appeal and in collateral review proceedings); *Morales v. Coyle*, 98 F. Supp. 2d 849, 893 (N.D. Ohio 2000) (*Michael Williams* standard satisfied where petitioner "sought an evidentiary hearing in state court, which was denied[.]").

Further, the Court should conclude that an evidentiary hearing is necessary to resolve

---

[3]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d). Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

6

petitioner's claim. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). A brief discussion of the law governing petitioner's fair cross-section claim demonstrates the necessity of an evidentiary hearing in this case.

The Sixth Amendment guarantees a criminal defendant the right to be tried before a jury drawn from a fair cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 359 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 526-31 (1975).

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren*, 439 U.S. at 364.

The newspaper articles relied upon by petitioner in the state courts and here–themselves containing statements of the court's judicial officers–provide some evidence that a distinctive group in the community–African-Americans–was systematically excluded in general by Kent County's computer error. That there is no evidence that this exclusion was the intentional result of racial animus is irrelevant to petitioner's fair cross-section claim. "In a fair cross-section analysis, purposeful discrimination is irrelevant since the emphasis is purely on the structure of the jury venire." *United States v. Perez-Hernandez*, 672 F.2d 1380, 1384 n.5 (11th Cir. 1982). Thus, "disproportionate exclusion of a distinctive group from the venire need not be intentional to be unconstitutional, but it

must be systematic." *Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004); *see also*, *Duren*, 439 U.S. at 366 (systematic exclusion shown by exclusion "inherent in the particular jury selection process utilized"); *id*. at 368 n.26; *United States v. Weaver*, 267 F.3d 231, 244 (3d Cir. 2001); *United States v. Royal*, 174 F.3d 1, 6 n.2 (1st Cir. 1999); *United States v. Jackman*, 46 F.3d 1240, 1246 (2d Cir. 1995). Indeed, in *Jackman* the court found systematic exclusion in circumstances strikingly similar to those involved here. *See Jackman*, 46 F.3d at 1242-48. Although this evidence exists in the abstract, what is lacking here is evidence specifically directed at the manner in which the jury venires were composed at the time of petitioner's trial. In order to resolve this claim, the court must "compare the difference between the percentage of the distinctive group among the population eligible for jury service and the percentage of the distinctive group" in the pool from which the jury was drawn. *United States v. Grisham*, 63 F.3d 1074, 1078 (11th Cir. 1995). For example, even assuming that the computer error occurred in the compiling of the venires, if the percentage of African-Americans in the pool from which the venires were drawn was nonetheless representative of the percentage of African-Americans in the county, there would be no fair cross-section claim notwithstanding that some individual African-Americans may have been improperly excluded. The circumstances relevant to petitioner's own case–namely, the composition of the pool from which the jurors were drawn and the composition of petitioner's venire–are simply not reflected in the record before the Court. Further, to the extent that there was any systematic underrepresentation, the record does not establish whether this underrepresentation resulted from the computer glitch or from factors attributable to the actions of private citizens.[4] Thus, an evidentiary hearing is necessary to resolve this claim.

---

[4]"If [a distinctive group is] underrepresented on the jury list because of legitimate juror qualifications, . . . then the . . . jury selection system does not unconstitutionally exclude [that group]." *Davis v. Warden, Joliet Correctional Inst. at Statesville*, 867 F.2d 1003, 1015 (7th Cir. 1989). For example, the courts are unanimous that a state may draw its jurors using voter

8

Accordingly, the Court should conclude that petitioner's jury composition claim is not barred by petitioner's procedural default in the state court, and that an evidentiary hearing is necessary to resolve this claim. If the Court agrees with this recommendation, the Court must appoint counsel to represent petitioner, *see* Rule 8(c), 28 U.S.C. foll. § 2254, and the Court may either conduct the hearing itself or refer the matter back to me for that the purpose, *see* Rule 8(b). Because all of the witnesses presumably reside in the Western District of Michigan, and petitioner is now incarcerated in that District, the Court may also wish to consider whether the case should be transferred to the Western District in accordance with 28 U.S.C. § 2241(d) (providing that, when two district courts have concurrent jurisdiction over a habeas application, "[t]he district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district for hearing and determination.").

D.  *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's claim is not barred by a procedural default, and that an evidentiary hearing is necessary to resolve petitioner's claim. If the Court agrees with this recommendation, the Court should appoint counsel to represent petitioner, and should either conduct an evidentiary hearing or refer the matter back to me for that purpose.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

---

registration lists, even when a distinctive group is underrepresented on such lists, *see id*. (citing cases), because "[d]iscrepancies resulting from private sector influences rather than affirmative governmental action do not reflect the constitutional infirmities contemplated by the systematic exclusion prong of *Duren*." *United States v. Rioux*, 930 F. Supp. 1558, 1572 (D. Conn. 1995), *aff'd*, 97 F.3d 648, 658 (2d Cir. 1996). Similarly, if a disparity resulted from the failure of minorities to return jury questionnaires, there would be no systematic exclusion. *See United States v. Ortiz*, 897 F. Supp. 199, 205 (E.D. Pa. 1995) (no systematic exclusion of Hispanics where "it was the unfortunate failure of Hispanics either to register to vote or to return the jury questionnaires, through no fault or encouragement of the court's jury selection procedures, which may have produced any underrepresentation of Hispanics on grand juries.").

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 7/2/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 2, 2008.

s/Eddrey Butts  
Case Manager